THOMAS E., JR. & LOLA V. BROCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MEDICAL MANAGEMENT INC., & SUBSIDIARIES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brock v. Commissioner
Docket Nos. 6505-77, 6775-78.
United States Tax Court
T.C. Memo 1982-335; 1982 Tax Ct. Memo LEXIS 410; 44 T.C.M. (CCH) 128; T.C.M. (RIA) 82335; June 16, 1982. David M. Buda and Thomas E. Brock, Sr., for the petitioners. Kenneth P. Dale, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined the following deficiencies in income tax and additions to tax against Medical Management, Inc., and subsidiaries, and Thomas E. Brock, Jr., and Lola V. Brock for the years and in the amounts indicated: Tax Year
Deficiency in
Addition to Tax, I.R.C. 1954
Petitioner
Ended
Income Tax
Sec. 6651(a)
Sec. 6653(a) [1]
Medical Management,
6/30/74
$24,775.64
$6,193.91
$1,238.78
Inc., & Subsidiaries
6/30/75
28,037.77
7,009.44
1,401.89
Thomas E. Brock, Jr.
& Lola V. Brock
12/31/73
9,848.62
492.43
*416 The issues in this case are (1) whether the numerous expenditures made by Medical Management, Inc., and its subsidiaries are properly deductible; (2) whether some of the amounts expended by the corporations were for the benefit of Thomas E. Brock, Jr., so as to constitute constructive dividend income to him; and (3) whether the fair rental value of a house and an automobile owned by the corporation and used by Mr. Brock constituted dividend income to Mr. Brock. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Medical Management, Inc. (Medical Management), is a corporation incorporated under the laws of the State of Ohio. At the time of the filing of its petition in this case, Medical Management had its principal place of business in Columbus, Ohio. For its fiscal years ending June 30, 1973, and June 30, 1974, Medical Management and its subsidiaries filed consolidated U.S. corporation income tax returns with the Internal Revenue Service Center, Covington, Kentucky, on January 7, 1974, and *417 July 22, 1975, respectively. Medical Management and its subsidiaries were granted and extension of time until April 15, 1976, to file the consolidated return for the fiscal year ending June 30, 1975. On July 18, 1977, Medical Management filed an application for an additional extension of time to file the consolidated income tax return for the fiscal year ending June 30, 1975, with the Internal Revenue Service in Columbus, Ohio. However, such application was denied. On July 15, 1977, Medical Management and its subsidiaries filed a consolidated U.S. corporation income tax return for the fiscal year ending June 30, 1975, with the Internal Revenue Service Center, Covington, Kentucky. Thomas E. Brock, Jr., and Lola V. Brock, husband and wife, who resided in Columbus, Ohio, at the time of the filing of their petition in this case, filed a joint Federal income tax return for the year 1973 with the Internal Revenue Service Center, Covington, Kentucky. Medical Management is an accounting firm which was founded in the early 1960's. The firm specializes in providing accounting, tax, and financial services to people in the medical field. Much of the work done by the firm involves the *418 preparation of monthly profit and loss statements as well as the preparation of various income tax returns for its clients. Additionally, certain of Medical Management's subsidiaries provide billing and collection services to its clients. Thomas E. Brock, Jr., is, and was during the years in issue, the sole shareholder and president of Medical Management. During the years 1973, 1974, and 1975, Medical Management and its subsidiaries together had approximately 25 employees. During these same years, Medical Management and its subsidiaries had approximately 125 clients located in various cities and towns throughout the State of Ohio. The offices of Medical Management and its subsidiaries during the years 1973, 1974, and 1975 were located in a four-story office building at 17 Aldrich Road, Columbus, Ohio. In 1973 Medical Management and its subsidiaries were occupying approximately one-quarter of this building and in 1974 the entire top floor of the building was taken over by Medical Management and its subsidiaries. In 1975 Medical Management purchased the building and had all four floors available for its use. Medical Management had clients located in several cities and towns *419 which were a distance of 50 to 100 or 200 miles from Columbus. The information needed to prepare a monthly profit and loss statement for a client was gathered either over the telephone or in a meeting between an employee of Medical Management and the client. Most of the meetings took place at the client's location. Mr. Brock usually represented the firm in any meetings with clients. However, if Mr. Brock had a schedule conflict, another officer of the corporation would meet with a client. Meetings with each individual client of the corporation would take place on a regular basis--monthly, once every two months, or at least once every three months. The frequency of the meetings depended on the distance of the client's place of business from Columbus and upon the number of clients which the firm had in a particular city. Meetings usually took place from 10:00 a.m. to 8:00 p.m. Often the meetings took place at the client's office. However, if a meeting occurred around lunchtime or dinnertime, the meeting usually was at a restaurant or lounge. Additionally, even if a meeting did not occur either at lunch or dinnertime, if the discussion involved the client's employees, the meeting *420 might take place outside of the client's office at a restaurant or bar. Any food or drinks consumed at such meeting were paid for by Medical Management. A client's monthly profit and loss statement contained the basic information needed for the discussions with employees of Medical Management whether those discussions involved accounting, tax, or financial questions. Medical Management maintained various charge card accounts. The credit cards for these accounts were held by Mr. Brock. Medical Management also had an arrangement with several restaurants whereby it maintained a tab and was directly billed periodically by the restaurant for any food or beverages consumed. The company's practice was to prepare summary sheets with respect to professional entertainment expenses incurred. The summary sheet was a one-page form which is as follows: MEDICAL MANAGEMENT, INC. AND SUBSIDIARIES
MM, INC. PCA, INC. COMPANY OFFICERS & ASSOCIATES
CLIENTS
DAVID BLAZER - MM INC. & SUBSIDIARIES
ROBERT VALLERY - PCA INC.
JOSEPH BANKES - MM INC.
THOMAS E. BROCK, JR. - MM INC. & SUBSIDIARIES
LOLA BROCK - WIFE
COMPANY ATTORNEY
PURPOSE OF MEETING: FINANCIAL, ACCOUNTING, *421 & TAX DISCUSSIONS MEDICAL MANAGEMENT & SUBSIDIARIES INTERNAL FINANCIAL & MANAGEMENT PROBLEMS EMPLOYEE PROBLEMS PLACE OF MEETING DATE OF MEETING AMOUNT OF PROFESSIONAL ENTERTAINMENT EXPENSE CREDIT CARD: MASTERCHARGE # * * * # * * * BANKAMERICARD # * * * # * * * CARTE BLANCHE # * * * AMER. EXPRESS # * * * MISCELLANEOUS: JAI LAI LEDOS SIGNATURE Normally these forms were filled out by Mr. Brock's secretary who derived the information from the bills or credit card slips which Mr. Brock gave to her on his return from a meeting. Since Mr. Brock might be gone a good part of the week in travelling and meeting with clients, the forms might be prepared the following week after he had returned to the office. If the meeting was with a client, Mr. Brock sometimes would write the client's name on the bill or charge slip invoice. If the bill or charge slip given to the secretary did not contain the name of the client with whom Mr. Brock met, the secretary would determine this information from Mr. Brock's desk calendar. The secretary kept such a calendar since she was responsible for telling Mr. Brock of any meetings with clients he had scheduled and also for telling *422 him what would be on the agenda for discussion at such meeting. Additionally, she would gather and place for him in a file folder the information or profit and loss statements he would need to have for any discussions which would take place at such meeting. Mr. Brock did not sign the completed statement; his secretary merely stamped his name on the statement with a signature stamp. Mr. Brock did not necessarily review the forms completed, especially in instances where the secretary could complete the form without asking him for any information. In addition to the meetings with clients, Mr. Brock had a number of meetings at bars and restaurants with individuals who were company officers and employees. Most of these meetings took place in Columbus. A large number of these meetings took place at two restaurants which were only 10 or 15 minutes away from the company's offices. The company had charge accounts at these restaurants. Summary sheets were also prepared for the meetings involving officers and employees. On April 19, 1971, Mrs. Brock entered into a real estate purchase contract to buy a home located at 2560 West Lane Avenue, Columbus, Ohio. The purchase price in the *423 contract was $64,900. The contract was contingent, however, upon Mrs. Brock's obtaining a conventional first mortgage of 80 percent of the purchase price for 25 years at an interest rate of not over 7-1/2 percent and upon the seller taking a second mortgage from the buyer in the amount of $7,500 for 2 years at 7-1/2 percent interest. On May 20, 1971, the Brocks purchased the residence at 2560 West Lane Avenue for the amount of $64,900. The Brocks on that same date executed a mortgage note on the property in order to obtain a loan of $51,000 at 6.9 percent interest from States Savings Co.Apparently the seller did take back a $7,500 second mortgage on the property with the remaining balance of the purchase price being paid in cash. On this same date, however, a quitclaim deed was executed by Mrs. Brock conveying the property to Medical Management with the corporation assuming the two mortgages taken out on the property. The quitclaim deed to the property was not recorded by Medical Management. The loan book on the $51,000 loan taken out with State Savings Co. shows that the corporation made all the monthly payments on the mortgage note and on October 13, 1976, paid off the entire *424 remaining balance owed on the note. The corporation listed the property as an asset on its books. Also, subsequent to the May 20, 1971, purchase date, the corporation again mortgaged the property. The property at 2560 West Lane Avenue was approximately 1-1/2 miles from Medical Management's offices at 17 Aldrich Road. From May 20, 1971, until the date of the trial of this case, Mr. and Mrs. Brock have resided at 2560 West Lane Avenue together with one of their sons and, on occasion, another son has also resided there with them. Mr. and Mrs. Brock have paid no rent to Medical Management for their use of the property. In the period from July 1, 1972, through June 30, 1975, Medical Management and its subsidiaries made numerous expenditures in payment of utility bills, maintenance and repair bills, insurance, interest, and real estate taxes connected with the 2560 West Lane Avenue property where Mr. Brock and his family resided. Additionally, the corporations reimbursed Mr. Brock for various expenditures of this nature which he had paid directly. Mrs. Brock and Medical Management and its subsidiaries entered an agreement dated January 5, 1971, concerning the payment of insurance *425 premiums taken out on the life of Mr. Brock.This agreement in pertinent part provided as follows: 1.) That the consideration to the "beneficiary" for the agreement between "beneficiary" and the "company" is that the "company" shall pay all insurance premiums on the life of Thomas E. Brock, Jr., an officer, director and shareholder of the company; hereafter, referred to as "insuree", and shall at all times render "beneficiary" unencumbered of all liabilities that may accrue to "beneficiary" concerning the payment of insurance premiums by the "company" on the life of "insuree". 2.) That as further consideration to the "beneficiary", the "beneficiary" shall become the sole beneficiary of all life insurance policies for which the premiums are paid by the "company". 3.) That as further consideration to the "beneficiary", the "beneficiary" cannot be removed as beneficiary of life insurance policies without the "beneficiary's" consent in writing. 4.) That as further consideration to the "beneficiary", the "beneficiary" shall have a life estate in the income from the proceeds of the life insurance policies on the life of the "insuree". 5.) That as consideration to the "company", *426 the "company" shall have the right to assess the principle [sic] of the proceeds of the life insurance on the life of the "insuree" for such capital contributions as may be required from time to time to maintain the solvency and the good name of the "company", only. Noting; that it is the opinion of the shareholder, director and officer, that is, "insuree", that the "company" shall be unable to perpetuate itself financially after the death of the shareholder, director, and officer of the "company", that is, "insuree". The agreement further provided that in order for Medical Management and its subsidiaries to utilize the right of assessment, an audit of the companies had to be performed by an independent certified public accountant who was required to certify their need for additional capital. The minutes of the meeting of the board of directors of Medical Management of July 5, 1971, contained the following resolution: RESOLVED, that the company adopt a group life insurance plan under which the company will pay the group life insurance for each employee employed by the company the amount to be the maximum amount reasonably available for each employee as specified by the Board *427 of Directors. During the period from July 1, 1972, through June 30, 1975, Mrs. Brock was the owner of four policies of life insurance on the life of Mr. Brock issued by the Equitable Life Assurance Company. During the same period, Medical Management was the owner of four policies of life insurance on the life of Mr. Brock issued by the Massachusetts Indemnity Life Insurance Company. For the years indicated, Medical Management paid the following premiums on these policies of life insurance: Insurance Premiums Paid
Equitable Life Assurance Co.
FYE
FYE
FYE
Policy No.
Amount
6/30/73
6/30/74
6/30/75
70-398-693
$100,000
$ 774.12
$ 774.12
$ 774.12
70-303-551
100,000
3,022.50
3,022.50
3,022.50
71-438-945
100,000
708.00
708.00
708.00
71-438-946
100,000
708.00
708.00
708.00
$5,212.62
$5,212.62
$5,212.62
Massachusetts Indemnity Life Insurance Co.
L-411-695
$100,000
$ 210.94
$ 2,539.68
$ 3,590.16
L-411-696
100,000
210.94
2,539.68
3,590.16
L-411-697
100,000
210.94
2,539.68
3,590.16
L-411-698
100,000
210.94
2,539.68
3,590.16
L-411-699
100,000
210.94
2,539.68
3,590.16
$1,054.70
$12,698.40
$17,950.80
*428 In October 1974, a client of Medical Management purchased a condominium apartment in a condominium project called Islands West located in Sarasota County, Florida. The warranty deed from the seller of the apartment named the client, two other individuals, and Mr. Brock as the grantees. The client had purchased an interest in the apartment for Mr. Brock without Mr. Brock's knowledge or consent. The client had used his own funds in purchasing the apartment. The stated purchase price for the apartment was $76,000. A downpayment of $7,500 was made and the balance of the purchase price was financed through a $51,000 mortgage. The Island West Condominium Association approved the assignment of its agreement with the seller to Mr. Brock's client and the other purchasers of the apartment. This agreement concerned the Association's operation and management of the common areas and grounds in the condominium complex in return for which payment of a monthly condominium fee was to be made by the owner of the apartment unit. Mr. Brock signed the assumption agreement necessary in order to obtain the Association's consent to the assignment on behalf of Medical Management. Medical Management *429 also repaid the client for the funds the client had advanced as Mr. Brock's share of the purchase price. The client managed the apartment and subsequently Medical Management sent the client checks to pay for a pro rata share of the maintenance expenses incurred in the operation of the property. In Medical Management's fiscal year ending June 30, 1975, the property produced no rental income. In 1977 or 1978 Mr. Brock and the other two grantees gave up their interests in the apartment to the client in return for his assuming payment of the unpaid balance owed on the purchase money mortgage. Mr. Brock was convicted under section 7206 of three felonies with respect to the filing of false Federal employment tax returns. Respondent in his statutory notice of deficiency made numerous adjustments as a result of the disallowance of the deductions for expenditures made by Medical Management and its subsidiaries. The following is a table summarizing the adjustments made by the statutory notice and also summarizing the explanation given in the statutory notice for each such adjustment: Medical Management, Inc., and Subsidiaries FYE
FYE
6/30/74
6/30/75
Consolidated Taxable Income Reported
$ 9,833.09 $22,625.54 Adjustments (Statutory Notice)
1. Medical Management, Inc.
a. Professional Entertainment
5,720.96 5,094.90 b. Office Supplies
817.96 236.07 c. Miscellaneous
4,554.11 5,816.15 d. Insurance
17,911.02 23,163.42 e. Auto Expense
1,032.85 1,556.70 f. Depreciation
3,236.17 9,079.31 g. Salary--Mary Brock
549.28 h. Net Operating Loss Deduction
19,334.44 i. Books & Journals
747.46 j. Island West Condo Loss
1,493.60 k. Travel
582.54 l. Flowers
718.53 $53,156.79 $48,488.68 2. Locking County Credit Association
a. Depreciation
(162.23)
(162.23)
(162.23)
(162.23)
3. T.E.B., Inc.
a. Insurance
$1,205.00 b. Reimbursed Expenses
2,048.95 $2,374.31 c. Legal Fee
2,379.00 d. Dues
700.00 e. Miscellaneous
3,248.24 $6,332.95 $5,622.95 4. Medical Management Educational Plans, Inc.
a. Office Supplies
139.36 b. Auto Expense
244.83 c.Professional Entertainment
171.10 d. Travel Expense
222.83 e. Depreciation
(16.22)
(26.40)
$ 761.90 (26.40)
5. Medical Management Accounts Receivable, Inc.
a. Office Supplies
$ 51.48 b. Depreciation
(10.12)
(8.87)
$ 41.36 $ 8.87 6. Medical Management Rentals, Inc.
a. Electric
$ 196.35 * $ 550.00 b. Water
758.47 c. Lawn Care
437.60 222.60 d. Insurance--
building contents
183.00 733.00 multi peril
41.00 fire
225.32 733.58 e. Repairs
5,561.53 1,455.60 Consolidated Taxable Income After Adjustment
77,365.13 80,234.85 Tax
30,636.22 28,541.50 Investment Tax Credit
(6,125.50)
(3,014.95)
Tax Due
$24,510.72 $25,526.55 Prior Year Investment Tax Credit Recomputed
264.92 2,511.22 Tax Due
$24,775.64 $28,037.77 Tax Reported on Return
Deficiency
$24,775.64 $28,037.22 Sec. 6651(a) Penalty
$ 6,193.91 $ 7,009.44 Sec. 6653(a) Penalty
$ 1,238.78 $ 1,401.89 *430 Explanation Given in Statutory
Notice
Consolidated Taxable Income Reported
Adjustments (Statutory Notice)
1. Medical Management, Inc.
a. Professional Entertainment
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
b. Office Supplies
Payment represented a capital expenditure.
c. Miscellaneous
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
d. Insurance
Not allowable because are either a direct or indirect beneficiary of the life insurance policies.
e.Auto Expense
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
f. Depreciation
Depreciation allowable recomputed.
g. Salary--Mary Brock
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
h. Net Operating Loss Deduction
No net operating loss available to be taken as deduction.
i. Books & Journals
Payments represented a capital expenditure.
j. Island West Condo Loss
Expenses incurred in an activity not entered into for profit.
k. Travel
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
l. Flowers
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
2. Licking County Credit Association
a. Depreciation
Depreciation allowable recomputed.
3. T.E.B., Inc.
a. Insurance
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
b. Reimbursed Expenses
Same as above.
c. Legal Fee
Same as above.
d. Dues
Same as above.
e. Miscellaneous
Same as above.
4. Medical Management Educational
Plans, Inc.
a. Office Supplies
Payment represented a capital expenditure.
b.Auto Expense
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
c. Professional Entertainment
Same as above.
d. Travel Expense
Same as above.
e. Depreciation
Depreciation allowable recomputed.
5. Medical Management Accounts
Receivable, Inc.
a. Office Supplies
Payment represented a capital expenditure.
b. Depreciation
Depreciation allowable recomputed.
6. Medical Management Rentals, Inc.
a. Electric
Not established that any of this amount constitutes an ordinary and necessary business expense or expended for purpose stated.
b. Water
Same as above.
c. Lawn Care
Same as above.
d. Insurance--
building contents
Same as above.
multi peril
Same as above.
fire
Same as above.
e. Repairs
Same as above.
Consolidated Taxable Income After
Adjustment
Tax
Investment Tax Credit
Tax Due
Prior Year Investment
Tax Credit
Recomputed
Tax Due
Tax Reported on Return
Deficiency
Sec. 6651(a) Penalty
Sec. 6653(a) Penalty
*431 Medical Management and its subsidiaries on their consolidated income tax return for the fiscal year ending June 30, 1973, claimed as a deduction part of a $40,229.34 net operating loss incurred in a prior year but available to be carried forward to the June 30, 1973, fiscal year. Respondent has issued no statutory notice of deficiency to Medical Management and its subsidiaries for the fiscal year ending June 30, 1973. Respondent in his statutory notice pertaining to the year ending June 30, 1974, determined that the net operating loss incurred by petitioner in the prior fiscal year was entirely used up in the fiscal year ending June 30, 1973, and that no portion of the net operating loss remained available to carry forward and be taken as a deduction for the fiscal year ending June 30, 1974. The following computation shows the adjustments in taxable income for the fiscal year ending June 30, 1973, asserted by respondent which are the basis for his position that no portion of the $40,229.34 net operating loss remained to be carried forward to the fiscal year ending June 30, 1974: FYE
6/30/73
Consolidated TI Reported
$20,894.90 (prior to reduction by net
operating loss deduction)
Adjustments--
1. Medical Management, Inc.
a. Professional Entertainment
7,615.18 b. Reimbursed Expenses
3,235.42 c. Office Supplies
1,456.63 d. Misc. & Office Services
6,987.59 e. Depreciation
3,522.23 f. Insurance Expenses
6,831.82 g. Building Repair & Maintenance--
Residence
715.81 h. Other Expense--Residence
4,414.75 i. Real Estate Taxes--Residence
2,373.33 j. Interest--Residence
3,479.01 k. Auto Expenses
847.41 $41,479.18 2. Licking County Collection Agency
a. Repairs
$ 1,622.33 b. Depreciation
(162.33)
$ 1,460.00 Consolidated TI Adjusted
$63,834.08 *432 The statutory notice was addressed only to Medical Management, and not to both it and its subsidiaries. In their petition, Medical Management and its subsidiaries also asserted the following additional matters: (1) that since no statutory notice was sent for taxable years ending before July 1, 1973, no adjustment can be made to the net operating loss carryover or investment tax credit carryover available for petitioner to take as a deduction or credit for the fiscal year ending June 30, 1974; (2) that since the statutory notice was addressed only to Medical Management and not to it and its subsidiaries, no disallowances can be made with respect to the subsidiaries; and (3) that, alternatively, if any of the alleged personal expenses of Mr. Brock are found not to be ordinary and necessary business expenses, the payment of such expenses was compensation rather than a dividend to Mr. Brock. After numerous concessions by the parties, the remaining individual expenditures of Medical management and its subsidiaries in issue basically fall into the following seven categories: (1) professional entertainment, (2) flowers, (3) expenditures made with respect to the 2560 West Lane Avenue *433 residence, (4) the premiums on the life insurance policies taken out on the life of Mr. Brock, (5) the miscellaneous expense and legal fees, (6) the reimbursed expenses, and (7) the loss claimed on the Island West condominium apartment. In his statutory notice to Mr. and Mrs. Brock, respondent determined that certain of the expenditures made by Medical Management and its subsidiaries in their fiscal years ending June 30, 1973, and June 30, 1974, constituted constructive dividend income to Mr. Brock and asserted a deficiency in tax of $9,848.62 and an addition to tax under section 6653(a) in the amount of $492.43.The statutory notice contained the following explanatory statements: EXPLANATION OF ADJUSTMENT Taxable Year Ended December 31, 1973 (a) During the year 1973, Medical Management, Inc. made certain payments to you or for your benefit and permitted you to use corporate property without compensation. It is determined that such items comprise dividend income under sections 301 and 316 of the Internal Revenue Code and are includible in your gross income. Therefore, your taxable income is increased in the amount of $33,393.54. See computation below: Professional entertainment
$ 6,117.85
Office supplies
96.24
Reimbursed expenses
3,187.69
Fair rental value of residence
8,400.00
Fair rental value of Lincoln
2,400.00
Other & office services
5,510.66
Insurance expense
7,131.82
Salary - Mary Brock
549.28
Total
$33,393.54
*434 After numerous concessions by the parties, the individual expenditures asserted to comprise dividend income to Mr. Brock which are still in issue relate to: (1) professional entertainment, (2) reimbursed expenses, (3) the rental value of the residence, (4) the rental value of the Lincoln Continental automobile, and (5) insurance expense.
Mr. and Mrs. Brock in their petition alleged the following additional matters: (1) that since the statute of limitations has run on the taxable year of Medical Management and its subsidiaries ending June 30, 1973, the Internal Revenue Service is barred from asserting any deficiencies against the Brocks attributable to dividends distributed in such fiscal year of the corporation to Mr. Brock; (2) that some of such alleged dividend distributions actually occurred in the calendar year 1972 and the statute of limitations on the taxable year 1972 for the Brocks has run; (3) that since the retained earnings of Medical Management for the fiscal year ending June 30, 1973, were in fact negative in amount, any distributions made by the corporation to Mr. Brock in such fiscal year of the corporation would not result in dividend income to him, and (4) that *435 the payment of any personal expenses by the corporation represented compensation rather than a dividend to Mr. Brock. OPINION Since there would be no constructive dividend to Mr. Brock to the extent that the expenditures made by Medical Management and its subsidiaries were valid business expenses, we will discuss first the deductibility of the expenditures made by the corporations. The corporations, however, raise two preliminary arguments: (1) that no valid statutory notice was sent with respect to the subsidiaries and (2) that no adjustments to the net operating loss and investment tax credit carryovers available for the fiscal year ending June 30, 1974, can be made since the statute of limitations barred any adjustments for the years prior to the fiscal year 1974. There is no merit to petitioners' argument that no adjustments can be made with respect to the subsidiaries since the statutory notice was addressed only to Medical Management. Medical Management and its subsidiaries filed a consolidated Federal income tax return. Section 1.1502-77, [2] Income Tax Regs., pertaining to the filing of a consolidated return by an affiliated group of corporations, states that the *436 common parent corporation shall in general be the sole agent for each subsidiary in the consolidated group duly authorized to act in its own name in all matters relating to tax liability for the consolidated return year and that the subsidiaries shall have no authority to act for or to represent themselves in any such matter. The regulation goes on to expressly state that the notice of deficiency will be mailed only to the common parent and that mailing to the common parent shall be considered a mailing to each subsidiary in the group. *437 We do not entirely understand Medical Management's second argument that no adjustment to the net operating loss or investment tax credit carryovers from prior years can be made since no statutory notice was sent with respect to those prior years. However, it appears that petitioner is essentially arguing that no adjustment can be made since the statute of limitations bars any assessment of tax for those prior years. The disallowance of deductions taken in the prior fiscal year ending June 30, 1973, is in issue only because disallowance of such deductions will diminish the net operating loss and investment tax credit available to be carried over to the fiscal year ending June 30, 1974. For purposes of determining the proper amount of net operating loss carryover deduction or investment tax credit which petitioner may take in fiscal year ending June 30, 1974, this Court clearly has jurisdiction to consider the facts related to the tax for a prior year even though no notice of deficiency has been sent for the prior year. Section 6214(b). Respondent here is not asserting any deficiency for the prior year. Further, the statute of limitations does not prevent a recomputation of a *438 barred year's income for purposes of determining the allowable net operating loss carryback or carryover deduction which may be taken in a year for which the Commissioner has determined a deficiency. Phoenix Coal Co. v. Commissioner,231 F.2d 420 (2d Cir. 1956), affg. a Memorandum Opinion of this Court; State Farming Co. v. Commissioner,40 T.C. 774 (1963). Similarly, it has been held that the statute of limitations does not prevent the recomputation of the investment tax credit carryover from a barred year in order to determine the tax due for an open year. Mennuto v. Commissioner,56 T.C. 910, 922-923 (1971). Petitioner's position is that all expenses claimed by Medical Management and its subsidiaries to be deductible as entertainment and flower costs were ordinary and necessary business expenses under section 162(a)(1). Retitioner asserts that the professional entertainment expenses represented the cost of meals consumed either at meetings with clients or meetings between corporate officers and employees at which corporate business discussions took place. Petitioner asserts the flower expenses were for flowers sent to clients *439 on birthdays or on holidays or other special occasions. Respondent disputes that all of the claimed expenses were for ordinary and necessary business expenses of the corporations. Additionally, respondent asserts that the claimed deductions cannot be allowed because of petitioner's failure to meet the requirements of section 274. [3] Under section 274(d), the taxpayer must substantiate every expenditure claimed as a deduction by either adequate records or other sufficient evidence and his failure to do so will cause such expenditures to be disallowed in full. See Sanford v. Commissioner,50 T.C. 823, 828-829 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). *440 In response, petitioner asserts that since the professional entertainment expenses were for business meals, they are excepted from being subject to section 274. Petitioner, however, is misreading the statute. Section 274(e)(1) only provides that section 274(a) will not apply in the case of business meals, so that a taxpayer would not have to show either that the expenditure was directly related to the active conduct of his trade or business or, in the case of an expenditure directly preceding or following a substantial and bona fide business discussion, that the expenditure was associated with the active conduct of his trade or business. Section 1.274-2(a) and -2(f)(1) and -2(f)(2)(i), [4] Income Tax Regs. *441 While business meals are specifically excepted from meeting the requirements of section 274(a), such meals must still meet the substantiation requirements contained in section 274(d). [5]
We have examined the documentation and other evidence offered by petitioner in substantiation of the amounts it claims as deductions for professional entertainment and flower expense. We have determined that the following amounts for the years indicated are allowable business expenses of petitioner which have been properly substantiated as required under section 274: [6]
*442 Medical Management, Inc.
Professional Entertainment
Taxable Year
Deduction Claimed
Deduction
Ending
by Petitioner
Allowable
FYE 6/30/73
$7,615.18
$3,129.91
FYE 6/30/74
5,720.96
2,953.64
FYE 6/30/75
5,094.90
3,682.88
Flowers
FYE 6/30/75
718.53
238.51
Medical Management Educational Plans, Inc.
Auto, Professional Entertainment & Travel
FYE 6/30/74
638.76
600.91
Petitioner's professional entertainment expenses fall into basically two categories: (1) meals and drinks at restaurants and lounges where Mr. Brock or, in a few instances, other corporation employees met with clients of the corporation and (2) meals and drinks at restaurants and lounges at meetings where only Mr. Brock was present with other company officers and employees. We have allowed deductions for those meetings at which clients were present. Since petitioner is an accounting firm which in the course of its business has meetings with clients on a regular basis, we consider the expenditures for food or beverages to be proper business expenses. The documents and other evidence offered by petitioner adequately substantiate the date, the amount of such *443 expense, and the business relationship of the person entertained. The only element of substantiation which is really in dispute is the business purpose for which the expense was incurred. [7] We are satisfied on this record that when Mr. Brock or another officer of the corporation met a client at a restaurant and made an expenditure for food or beverages, there was a clear business purpose for the expense. Further, the food and beverages consumed at most of such meetings would constitute business meals. Section 274(e)(1). Thus, petitioner need not show such entertainment to be directly related to or associated with the active conduct of its business. *444 However, we are more skeptical of meetings where only corporate officers and employees were present. While such meetings may have been legitimate business meetings at which corporate business was discussed, such meetings could have also been mere social occasions at which Mr. Brock met his associates and friends for meals or drinks. Section 274(a) specifically requires the taxpayer to show that such entertainment was directly related to or associated with the active conduct of his trade or business. Petitioner in this respect has failed to meet this requirement of the statute.[8] There is a broad category on the form sheet to be checked indicating that the meeting was held for the purpose of discussing internal, financial, and management problems, or employees' problems of Medical Management and its subsidiaries. With respect to the professional entertainment in dispute, such box on the form sheet was always checked when a meeting occurred at which only Mr. Brock and other company officers or employees were present. The sheet does not elaborate on any specific topics discussed at the meeting. There is a space on the form summary sheets for filling in to indicate that a meeting *445 was held for some other purpose. However, this information would have to be typed in. On all of the summary sheets submitted for the expenses here in dispute, the purpose of the meeting is shown by a check mark to be either for financial, accounting, and tax discussions with clients or for discussions between corporate employees and officers of various internal, financial, and management problems or employee problems of the corporations. Almost half of the amounts claimed by petitioner for professional entertainment expenses for the years here in issue were incurred during various meetings at which only company officers and employees were present. At all of such meetings, Mr. Brock was present. Further, a number of the meetings took place at two restaurants which were in the neighborhood of the company's offices. Testimony at trial was that such restaurants were located only a 10 or 15 minute drive away from the company's offices. In light of these circumstances, we are of the view that merely checking off a box indicating that a meeting was for discussion of corporate business is not satisfactory substantiation that a substantial and bona fide business discussion took place. *446 See section 274(a)(1). In many instances, petitioner had no substantiation at all for the flower expense. However, petitioner offered copies of some florist bills. These bills indicate the date and the cost of the flowers that were purchased. These expenditures are for less than $25. See section 274(b)(1). Although most of these bills indicate to whom the flowers were sent, petitioner has in many instances failed to substantiate the crucial elements of the expenditure pertaining *447 to the business purpose for the expenditure and the business relationship to the taxpayer of the person to whom the flowers were sent. Section 1.274-5(a), Income Tax Regs. However, $238.51 of the $718.53 of claimed expense is adequately substantiated and petitioner is entitled to a deduction for that amount. We have found that $600.91 of the $638.76 claimed as professional entertainment and travel expense of Medical Management's subsidiary, Medical Management Educational Plans, Inc., is adequately substantiated and is deductible. The next category of expenditures in issue relates to the personal residence furnished Mr. and Mrs. Brock. Respondent in his statutory notice proceeded on two separate and distinct theories: (1) that the conveyance of the residence by the Brocks to Medical Management was a sham so that the Brocks in actuality remained the owner of the residence or (2) in the alternative, if the conveyance is found to be valid, the Brocks have dividend income to the extent of the fair market rental value of the property. Different consequences result from the application of these different theories. If the Brocks are indeed the actual owners of the property, then all *448 of the expenditures by the corporations with respect to the property will constitute a distribution under section 301, i.e., a potential dividend to Mr. Brock. If the corporation is the owner of the property, then all of the expenditures made for maintenance, repair, taxes, and interest expenses would not constitute dividend income to Mr. Brock since such expenditures are for the upkeep of a corporate asset. The record in this case discloses that a quitclaim deed was executed by Mrs. Brock to the corporation. While transactions between a taxpayer and his closely held corporation are subject to special scrutiny, we are satisfied in this case that the corporation did become the actual owner of the property. The residence was listed as a corporate asset on the corporate books. After the transfer, the corporation did mortgage the property in order to receive a loan from a bank. However, merely because it was the owner of the property does not mean that all expenditures are automatically deductible by the corporation. The statute specifically provides for the deduction of interest expense and taxes. Sections 163 and 164. However, in order to be entitled to deduct the expenses for *449 repairs and maintenance which Medical Management claimed on its return, it must be shown that the expenditures are ordinary and necessary expenses incurred in the carrying on of the corporation's trade or business. In order to be entitled to the claimed deduction for depreciation on the property, Medical Management must show that the property is held for use in its trade or business or for the production of income.Sections 162, 212, and 167. Petitioner asserts that it was necessary for the corporation to acquire the residence because a personal service corporation normally has a poor credit standing. Petitioner offered testimony to the effect that it was hoped that by the acquisition of a tangible asset, the corporation's credit standing would be improved. We do not accept petitioner's contention. In order to acquire the residence, the corporation assumed payment of sizable mortgages. Additionally, the corporation incurred substantial operating and maintenance expenses. In spite of all the substantial expenses which it incurred, the corporation permitted Mr. and Mrs. Brock to live in the home rent free. In our view, it is clear that the residence was acquired solely for *450 the personal benefit of the Brocks. Thus, we do not accept petitioner's argument that the acquisition of the home and the expenses the corporation incurred with respect to the home constitute ordinary and necessary expenses of its accounting business. Whether a taxpayer is engaged in a trade or business is a question of fact. Although there are several factors which are deemed important in making this determination, the most prominent of these factors is a profit motive and the carrying on of activities in a businesslike fashion. See International Trading Co. v. Commissioner,275 F.2d 578, 584-585 (7th Cir. 1960), affg. a Memorandum Opinion of this Court.On this record it is clear that the expenses incurred with respect to the property were not ordinary and necessary expenses of the corporation's accounting business nor were they incurred in the carrying on of any other trade or business.Further, the property was not held by the corporation for the production of income. Such being the case, it is also clear that no allowance for depreciation is allowable with respect to the residence. Petitioner urges that any amounts not found to be ordinary and necessary *451 business expenses be found to constitute compensation to Mr. Brock. The corporation, of course, can deduct amounts which are paid as compensation to an officer so long as such payments (1) do not exceed reasonable compensation for the services actually rendered and (2) are actually intended to be paid purely for the services. Section 1.162-7, Income Tax Regs. Petitioner has failed to establish that any of these expenditures were intended as compensation to Mr. Brock. No testimony was offered to this effect, nor did Mr. Brock report these expenditures on his individual income tax return as compensation. On the basis of this record, we conclude that the expenditures made by the corporation were clearly not intended to be compensation to Mr. Brock. Absent a showing that the amounts were intended as compensation, they are not deductible by the corporation as compensation. Electric and Neon, Inc. v. Commissioner,56 T.C. 1324, 1340-1342 (1971); Challenge Mfg. Co. v. Commissioner,37 T.C. 650, 663 (1962). All of the individual items in the category labeled "reimbursed expenses" which are still in issue relate to expenditures made in connection with *452 the maintenance of the residence. As discussed above, such expenditures are not ordinary and necessary business expenses of the corporation nor expenses in connection with property held for the production of income. Accordingly, no deduction can be allowed for such reimbursed expenses, except for the $768 which respondent concedes is properly allowable as a deduction for the fiscal year ending June 30, 1975. The next category of expenditures in issue is the premiums which were paid on the $900,000 of life insurance policies taken out on Mr. Brock's life. In order for such premiums to be deductible, it must be established (1) that the premiums are not made nondeductible by section 264(a)(1) because Medical Management is a direct or indirect beneficiary of the policies and (2) that the premiums paid were ordinary and necessary besiness expenses of the corporation. Desks, Inc. v. Commissioner,18 T.C. 674, 678-679 (1952). [9]
Section 264 does not require that the corporation be named by the policy as the beneficiary to which the proceeds will be payable but merely *453 that it be "a" beneficiary. Keefe v. Commissioner,15 T.C. 947, 952-953 (1950). See also section 1.264-1(b), Income Tax Regs.
The agreement which was entered into with Mrs. Brock allows the corporations to draw against the proceeds of the policies in order to maintain solvency. Medical Management and its subsidiaries clearly have a beneficial interest in the policies. Petitioner argues that such beneficial interest is too contingent to cause the corporation to be a direct or indirect beneficiary of the policy within the meaning of section 264(a)(1). Petitioner, however, has a definite contractual right to draw against the proceeds of the policies. In Desks, Inc. v. Commissioner,supra, a corporation agreed to pay the premiums on a policy of life insurance held by a creditor of its bankrupt business predecessor in order to be allowed to receive merchandise on credit. Subsequently, as a result of the bankruptcy, the creditors of the predecessor were paid 20 cents on the dollar on the debts owed to them by the bankrupt. Accordingly, the creditor and taxpayer corporation entered into an agreement whereby the creditor would return any insurance *454 proceeds in excess of the unpaid indebtedness. In light of this enforceable right in the insurance proceeds, no deductions for the premium payments were allowed. In the present case, we find that Medical Management had a direct contractual interest in the insurance proceeds and thus cannot obtain any deduction for its payment of the premiums on the policies. Additionally, we find that the premiums do not constitute ordinary and necessary business expenses. The premium payments do not constitute compensation to Mr. Brock but, as will be discussed infra, represented a dividend to him. The corporation undertook to pay the premiums on these insurance policies of which Mrs. Brock was the primary beneficiary. Upon Mr. Brock's death, the policies were to be put in trust and the income paid to Mrs. Brock. The corporation could only draw against the trust corpus in the event of certified financial need in order to maintain its solvency. This case is not readily distinguishable from Guglielmetti v. Commissioner,35 T.C. 668, 673 (1961), where no deduction was allowed for the premiums paid on a life insurance policy taken out on the life of the owner of a sole proprietorship *455 where the proceeds on the policy were payable to the wife of the taxpayer-owner. Payment of these premiums was held to be a purely personal expense, rather than an ordinary and necessary business expense.
For the most part petitioner has failed to prove that the legal and miscellaneous expenses it claimed as deductible were incurred in carrying on its business. For the fiscal year ending June 30, 1973, respondent concedes that $3,763.35 is deductible. We find that petitioner has failed to show that the balance [10] for the year 1973 of $3,224.24 is deductible. Petitioner has totally failed to show that most of the expenditures denominated miscellaneous expense of Medical Management for the fiscal year 1974 are deductible. Of the $4,554.11 amount claimed by petitioner on its return, we find that only $562.88 is deductible as a business expense.Petitioner did offer some documentation and testimony that various of these expenditures were for professional entertainment or for flowers sent to clients. In making our determination, we used the same criteria discussed *456 above with respect to the deductibility of the professional entertainment and flower expenses. Of the $5,816.15 claimed as miscellaneous expense by Medical Management in the fiscal year ending June 30, 1975, we have determined that the amount of $3,300 is properly allowable as a deduction to Medical Management. Most of the allowable deductions consisted of payments made as a monthly retainer to an attorney for the corporation. Petitioner has failed to show whether the $2,379 legal fee claimed as a deduction by T.E.B., Inc., represented the legal expense of Medical Management and its subsidiaries rather than expenses of Mr. Brock individually. Accordingly, we sustain respondent's disallowance of this claimed deduction. With respect to the $3,248.24 of miscellaneous expense claimed for T.E.B., Inc., in the fiscal year ending June 30, 1975, respondent has conceded that an $852.88 expenditure to the Fontenelle Restaurant claimed as part of a deduction of miscellaneous expense for T.E.B., Inc., is properly deductible.Of the remaining $2,395.36, we find that $1,525 is properly deductible. The amount which we find deductible consists of legal fees paid to two different attorneys for *457 the corporation. Part of this amount represented a monthly retainer paid to one attorney. The balance represented amounts paid to an attorney who specialized in corporate work. The last remaining category of expense relates to the deductions claimed by Medical Management with respect to the Island West condominium apartment. Based on the record, we are not satisfied that an interest in the condominium apartment was acquired by Medical Management. Mr. Brock testified that his client bought him an interest in the apartment without prior consultation but that he had felt obliged to reimburse the client. The deed to the condominium apartment lists Mr. Brock, rather than Medical Management, as a grantee. Mr. Brock signed the assumption agreement to pay the monthly condominium fee on behalf of Medical Management. However, as far as we can determine, record title remained in Mr. Brock's name. The warranty deed from the seller of the apartment names Mr. Brock individually as one of the four grantees with the other three grantees being the client and two other individuals. Further, there is an absence of any evidence in the record of a profit motive for Medical Management's acquisition *458 of the apartment. The apartment was located in Sarasota County, Florida, and it is difficult to see how it could be used in the accounting business of Medical Management. Medical Management, however, may have acquired the apartment as an investment. However, the record shows that its activities with respect to the apartment were not carried out in a very businesslike fashion. Mr. Brock testified that the actual management and operation of the apartment was carried on by the client. Yet, Medical Management in its fiscal year ending June 30, 1975, reported no rental income at all on the apartment. We conclude that the amounts paid as maintenance on the condominium apartment were not ordinary and necessary business expenses of the corporation and that the condominium was not property held for use in the corporation's trade or business upon which depreciation is allowable.
Respondent takes the position that many expenditures made by the corporation constituted dividend income to Mr. Brock. [11]Section 301(a) generally provides that the distribution of property made by a corporation to a shareholder with respect to its stock shall be taxed on the shareholder as provided in section *459 301(c). Section 301(c)(1) provides that any portion of the distribution which is a dividend as defined in section 316 shall be included in the income of the shareholder to the extent the distribution is out of the corporation's earnings and profits. Section 301(c)(2) provides that any portion of a distribution which is not a dividend shall be first applied to reduce the basis of the shareholder in the stock and section 301(c)(3) provides that any portion of *460 the distribution which is not a dividend but in excess of the shareholder's basis shall in general be treated as a capital gain.A distribution under section 301 may be found even though the corporation has not formally declared a dividend. Crosb v. United States,496 F.2d 1384, 1388-1389 (5th Cir. 1974). However, by its express terms, section 301 is applicable only where distribution has been made by the corporation with respect to its stock. The statute is not applicable where an amount is paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such. Section 1.301-1(c), Income Tax Regs. Petitioners argue that any nondeductible expenditures of the corporations should be found to be compensation to Mr. Brock rather than a distribution under section 301. We do not agree with this contention since there is no showing in the record that such expenditures were intended as compensation. Electric and Neon, Inc. v. Commissioner,supra;Challenge Mfg. Co. v. Commissioner,supra.
However, not every nondeductible expenditure made by a corporation necessarily gives rise to potential *461 dividend income to a shareholder. Ashby v. Commissioner,50 T.C. 409, 417-418 (1968). In addition to being nondeductible by the corporation, the expenditure must confer an economic benefit upon the shareholder and such expenditure must primarily benefit the shareholder personally as opposed to furthering the interest of the corporation. Ireland v. United States,621 F.2d 731, 735 (5th Cir. 1980); Ashby v. Commissioner,supra.
It is well settled that a shareholder's use of corporate property can result in a constructive dividend to him measured by the fair market rental value of the property. Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225, 1240-1242 (1971). Here, the Brocks' rental-free use of the residence and the Lincoln Continental automobile constitute distributions under section 301. Petitioners argue that the use of the residence is excludable from the income of the Brocks under section 119 since the residence constituted lodgings furnished to an employee for the convenience of the employer. In order for the value of lodgings to be excludable from an employee's income under section 119, the *462 following requirements must be met: (1) the lodging must be furnished on the business premises of the employer, (2) the lodging must be furnished for the convenience of the employer, and (3) the employee must be required to accept such lodging as a condition of his employment. Dole v. Commissioner,43 T.C. 697 (1965), affd. 351 F.2d 308 (1st Cir. 1965); section 1.119-1(b), Income Tax Regs. Here, the residence was not located on the business premises of Medical Management. The home was located 1-1/2 miles from the offices of the corporation. The lodging was not furnished for the convenience of the corporation nor was its use by the Brocks a condition of Mr. Brock's employment. Since petitioner does not argue that the actual fair market rental value for the residence and for the automobile are lesser amounts than that asserted in the statutory notice, we find the amounts as asserted to be the amounts of distributions made to Mr. Brock by the corporation in connection with the rent-free use of these properties. Section 301(b)(1)(A). Petitioners assert that the premiums paid on the insurance policies taken out on Mr. Brock's life are excludable from *463 Mr. Brock's income under section 79. However, section 79 only excludes from the income of the employee the cost of $50,000 of group term life insurance carried by the employer on the life of the employee. Here the $900,000 of life insurance well exceeds the $50,000 limitation contained in section 79. Also, the record does not show that the insurance carried was group term life insurance. See section 1.79-1(a), Income Tax Regs.[12] The record fails to show that there in actuality was a plan providing term life insurance coverage to any employee of the corporation other than Mr. Brock. Moreover, even if other employees were extended insurance coverage, it is clear that the $900,000 of insurance provided to Mr. Brock was not computed under a formula that precluded individual selection. Towne v. Commissioner, 78 T.C.     (May 12, 1982); section 1.79-1(a)(4), Income Tax Regs. We therefore hold that the amounts paid by the corporation for life insurance premiums on Mr. Brock's life constitute a section 301 distribution to Mr. Brock. Johnson v. Commissioner,74 T.C. 1316 (1980). *464 Since as discussed above we found that the corporation was the actual owner of the residence, many of the payments made by the corporation with respect to the house or made to Mr. Brock for funds he had expended on the house were expenses of the corporation. We hold that these payments did not constitute section 301 distributions to Mr. Brock where the expenditure was for maintenance and repairs which a landlord would normally incur with respect to his leased property. To hold that such expenditures constituted a constructive dividend to Mr. Brock would result in duplication since we have already held the fair rental value of the residence to be a dividend to Mr. Brock. However, except in a few instances, petitioner failed to match and associate expenditures by Mr. Brock for repairs and maintenance of the house with the checks drawn by Medical Management to Mr. Brock. Petitioners have the burden of proof on this issue. We have determined that $1,163.77 of the $3,187.69 represented a section 301 distribution to Mr. Brock. We have found that $3,049.88 of the $6,117.85 professional entertainment expense, which respondent asserts is a constructive dividend to Mr. Brock, is in *465 fact deductible by the corporations since such expenses constituted an ordinary and necessary business expense under section 162 and were adequately substantiated as required under section 274. However, merely because the balance of the professional entertainment expense was disallowed because of failure to provide the substantiation required under section 274 does not mean that all of such expenses were a dividend to Mr. Brock. Some of these amounts could have constituted ordinary and necessary expenses of the corporation even though they were not properly substantiated. Section 274 disallows deductions to the corporation for failure of proper substantiation even though the amounts would otherwise be deductible under section 162. It does not follow, merely because section 274 precludes any deduction of the expenditure by the corporation, that such expenditure represented income to the employee. Ashby v. Commissioner,supra at pp. 417-418. [13] Doing the best we can on this record and bearing heavily against petitioner since the inexactitude was of his own making, we find 20 percent of the disallowed amount for professional entertainment expenses are not dividend *466 distributions to Mr. Brock but represented business expenses of the corporation. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Thus, only the remaining 80 percent of the $3,067.97 balance of the disallowed professional entertainment expense of the corporation is a section 301 distribution to Mr. Brock. Having determined above that distributions under section 301 were made to Mr. Brock, we must determine the tax treatment of those distributions.Sections 301(c)(1) and 316 provide that to the extent of earnings and profits such distributions will be dividends to the shareholder. Section 316(a)(2) expressly provides that a distribution will constitute a dividend to the extent of any current earnings and profits for the taxable year. To the extent that a corporation has current earnings and profits as of the close of its taxable year, any distribution made in that year will be presumed to be made out of such current earnings and profits. Where current earnings and profits are sufficient to cover the entire distribution, it is unnecessary to determine whether the distribution was made *467 out of accumulated earnings and profits. See generally section 1.316-1(a)(1), Income Tax Regs. Here Medical Management and its subsidiaries on their consolidated income tax returns for the taxable years ending June 30, 1973, and June 30, 1974, reported taxable income in the amounts of $20,894.90 and $22,625.54, respectively, prior to the reduction by the application of any net operating loss carryover deduction.Apparently, therefore, there were sufficient current earnings and profits to cover distributions made to Mr. Brock. Accordingly, such distributions represented dividend income to him. [14]
*468 We sustain respondent's determination of the additions to tax under sections 6651(a)(1) and 6653(a) against Medical Management and its subsidiaries and against Mr. and Mrs. Brock.Petitioners have failed to introduce any evidence showing that the late filing of the tax returns was due to reasonable cause or that any underpayment in tax was not attributable to negligence or intentional disregard of rules or regulations. Fischer v. Commissioner,50 T.C. 164, 177 (1968); Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). It will be necessary to compute the actual amount of such additions to tax based on the deficiencies resulting from our holding with respect to the other issues in this case. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
*. Not specified as to whether utility expense for water or electricity.↩
2. Sec. 1.1502-77, Income Tax Regs., states in pertinent part as follows: (a) Scope of agency of common parent corporation.↩ The common parent, for all purposes (other than the making of the consent required by paragraph (a)(1) of sec. 1.1502-75, the making of an election under section 936(e), the making of an election to be treated as a DISC under sec. 1.992-2, and a change of the annual accounting period pursuant to paragraph (b)(3)(ii) of sec. 1.991-1) shall be the sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability for the consolidated return year. Except as provided in the preceding sentence, no subsidiary shall have authority to act for or to represent itself in any such matter. For example, any election available to a subsidiary corporation in the computation of its separate taxable income must be made by the common parent, as must any change in an election previously made by the subsidiary corporation; all correspondence will be carried on directly with the common parent; the common parent shall file for all extensions of time including extensions of time for payment of tax under section 6164; notices of deficiencies will be mailed only to the common parent, and the mailing to the common parent shall be considered as a mailing to each subsidiary in the group; notice and demand for payment of taxes will be given only to the common parent and such notice and demand will be considered as a notice and demand to each subsidiary; the common parent will file petitions and conduct proceedings before the Tax Court of the United States, and any such petition shall be considered as also having been filed by each such subsidiary. * * *
3. Sec. 274 states in part as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) Entertainment, Amusement, or Recreation.-- (1) In general.--No deduction otherwise allowable under this chapter shall be allowed for any item-- (A) Activity.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business * * *. (b) Gifts.-- (1) Limitations.--No deduction shall be allowed under section 162 or section 212 for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $25. * * * (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.
(e) Specific Exceptions to Application of Subsection (a).--Subsection (a) shall not apply to-- (1) Business meals.--Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion.↩
4. Sec. 1.274-2(f)(1) and -2(f)(2)(i), Income Tax Regs., states as follows: (f) Specific exceptions to application of this section--(1) In general. The provisions of paragraphs (a) through (e) of this section (imposing limitations on deductions for entertainment expenses) are not applicable in the case of expenditures set forth in subparagraph (2) of this paragraph. Such expenditures are deductible to the extent allowable under chapter 1 of the Code. This paragraph shall not be construed to affect the allowability or nonallowability of a deduction under section 162 or 212 and the regulations thereunder. The fact that an expenditure is not covered by a specific exception provided for in this paragraph shall not be determinative of the allowability or nonallowability of the expenditure under paragraphs (a) through (e) of this section. Expenditures described in subparagraph (2) of this paragraph are subject to the substantiation requirements of section 274(d) to the extent provided in sec. 1.274-5. (2) Exceptions. The expenditures referred to in subparagraph (1) of this paragraph are set forth in subdivisions (i) through (ix) of this subparagraph. (i) Business meals and similar expenditures--(a) In general. Any expenditure for food or beverages furnished to an individual under circumstances of a type generally considered conducive to business discussion (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity, and the relationship to such trade, business or activity of the persons to whom the food or beverages are furnished) is not subject to the limitations on allowability of deductions provided for in paragraphs (a) through (e) of this section.There is no requirement that business actually be discussed for this exception to apply. (b) Surroundings.↩ The surroundings in which the food or beverages are furnished must be such as would provide an atmosphere where there are no substantial distractions to discussion. This exception applies primarily to expenditures for meals and beverages served during the course of a breakfast, lunch or dinner meeting of the taxpayer and his business associates at a restaurant, hotel dining room, eating club or similar place not involving distracting influences such as a floor show. This exception also applies to expenditures for beverages served apart from meals if the expenditure is incurred in surroundings similarly conducive to business discussion, such as an expenditure for beverages served during the meeting of the taxpayer and his business associates at a cocktail lounge or hotel bar not involving distracting influences such as a floor show. This exception may also apply to expenditures for meals or beverages served in the taxpayer's residence on a clear showing that the expenditure was commercially rather than socially motivated. However, this exception, generally, is not applicable to any expenditure for meals or beverages furnished in circumstances where there are major distractions not conducive to business discussion, such as at night clubs, sporting events, large cocktail parties, sizeable social gatherings, or other major distracting influences.
5. See Holland v. Commissioner,T.C. Memo. 1974-135↩.
6. The parties have made little effort to assist the Court in determining the amounts of the expenses properly substantiated under sec. 274 or those clearly nondeductible because substantiation was either nonexistent or inadequate. The parties stipulated as to the checks issued by the corporation to certain payees giving rise to the expenditures which are in issue and as to the documentation which petitioner has in substantiation of such expenses. Respondent argues that none of the expenses other than items conceded at trial are properly substantiated and petitioner argues that all the claimed deductions have been properly substantiated. On the basis of this record, it is obvious that neither of these extreme positions is correct. However, the parties have left this Court with the work of, in effect, auditing numerous documents to determine which expenses are properly deductible. Apparently, counsel for each party felt that he could save time and effort on his own part at a cost to the Court of a great expenditure of time and effort by leaving the task to the Court of, in effect, doing an audit of petitioner's records. Each counsel had the same records available when he prepared his brief.↩
7. Respondent on brief contends that the summary sheets submitted by petitioner are inadmissible hearsay. However, respondent made no objection when the sheets were offered and admitted into evidence at trial. The stipulation entered into between the parties states that respondent does not stipulate that "the documents were prepared contemporaneously with any 'entertainment' they purport to substantiate or that they were prepared by any person whose name appears at any place thereon." After testimony was received with respect to these documents at the trial, petitioner offered them in evidence and respondent's counsel stated that respondent had no objection to their receipt in evidence. Accordingly, any objection reserved in the stipulation was waived and is not properly made at this late date on brief. Rule 103(a)(1), Federal Rules of Evidence. See also McCormick On Evidence (2d ed. 1972) sec. 52. Further, it is our view that the summary sheets are admissible under Rule 803(6), Federal Rules of Evidence.↩ The summary sheets were compiled from the bills or credit card slips. Certainly, the waiter or cashier who wrote the bill or charge slip had firsthand knowledge as did Mr. Brock or the other corporate employee to whom the bill or slip was given. There is nothing to indicate that the information derived from a bill or charge slip would be untrustworthy. The summary sheets were prepared within a reasonable time after the meetings at which the food or beverages were consumed.
8. Petitioner asserts that it should be excused from producing adequate records because a large number of documents were lost when petitioner twice subsequently moved its offices. Sec. 1.274-5(c)(5), Income Tax Regs., provides that a taxpayer shall have the right to substantiate a deduction by reasonable reconstruction of his expenditures where his records are lost due to circumstances beyond his control, such as by fire, floord, earthquake, or other casualty. A loss of records in moving offices is not a loss resulting from circumstances beyond the taxpayer's control. Luben v. Commissioner,T.C. Memo. 1978-198; Patchett v. Commissioner,T.C. Memo. 1976-292↩.
9. See also Champion Trophy Mfg. Corp. v. Commissioner,T.C. Memo. 1972-250↩.
10. In fact, petitioner at trial stipulated and agreed that $2,941.44 of this remaining amount was not deductible.↩
11. Petitioners Mr. and Mrs. Brock argue that the statute of limitations bars any assessment of tax against them for the year 1973 based on dividends from Medical Management and its subsidiaries since redetermining of a deficiency against the corporation for the year ending June 30, 1973, is barred by the statute of limitations. However, a corporation is not only a separate legal entity from its shareholders but also a separate taxpayer for Federal tax purposes. See generally Moline Properties, Inc. v. Commissioner,319 U.S. 436↩ (1943). The fact that the statute of limitations bars assessment of tax against the corporation does not bar the assertion of a deficiency against the individual shareholder.
12. Sec. 1.79-1(a), Income Tax Regs., states as follows: (a) What is group-term life insurance? Life insurance is not group-term life insurance for purposes of section 79 unless it meets the following conditions: (1) It provides a general death benefit that is excludable from gross income under section 101(a). (2) It is provided to a group of employees. (3) It is provided under a policy carried directly or indirectly by the employer. (4) The amount of insurance provided to each employee is computed under a formula that precludes individual selection. This formula must be based on factors such as age, years of service, compensation, or position. This condition may be satisfied even if the amount of insurance provided is determined under a limited number of alternative schedules that are based on the amount each employee elects to contribute. However, the amount of insurance provided under each schedule must be computed under a formula that precludes individual selection.↩
13. See also Finney v. Commissioner,T.C. Memo. 1980-23↩.
14. Petitioner alternatively alleged that some of such distributions occurred in 1972, a year with respect to which the assessment of any deficiency against the Brocks is barred by the statute of limitations. The parties have stipulated to all of the checks drawn by Medical Management which are asserted to represent constructive dividends. Most of such checks bear dates falling within the 1973 calendar year, and we have been careful to include as dividend income in our findings only those amounts paid in such taxable year. Accordingly, there is no merit to the statute of limitations issue raised by petitioners.↩